**STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS**

*In re* **C.L. and E.L.**

**No. 21-0926** (Barbour County 20-JA-53 and 20-JA-54)

**MEMORANDUM DECISION**

Petitioner Mother L.L., by counsel Ashley Joseph Smith and Holly L. Netz, appeals the Circuit Court of Barbour County's October 14, 2021, order terminating her parental rights to C.L. and E.L.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Allison C. Iapalucci (the "guardian"), filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her a post-dispositional improvement period and terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In August of 2020, the DHHR filed a petition alleging that law enforcement raided petitioner's home and seized forty-five grams of methamphetamine and two grams of heroin. The children were in the home at the time of the raid. According to the DHHR, law enforcement had been investigating petitioner's home for drug activity for several months. The DHHR also alleged that petitioner had a history of drug convictions and prior abuse and neglect proceedings, as she voluntarily relinquished her parental rights to several children beginning in 2006. As such, the DHHR alleged that petitioner abused and neglected C.L. and E.L.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

At the subsequent preliminary hearing, petitioner was informed that any contact between her and the children would be contingent upon her compliance with drug screens and compliance with the DHHR. Petitioner also submitted to a drug screen that was positive for benzodiazepines, cocaine, fentanyl, and marijuana.

In October of 2020, the guardian filed a motion to cease all contact between petitioner and the children and for a temporary protective order on their behalf. According to the guardian, petitioner was not compliant with drug screening and was arrested twice since the preliminary hearing, including one arrest that was alleged to involve a firearm. The guardian also alleged that petitioner was released on bail following both arrests and immediately went to the children's foster home, placed the foster parent in fear, and caused the children to see her without proper supervision and in violation of the court's order. The DHHR joined in the guardian's motion. That same month, the circuit court granted the motion and ordered that petitioner cease any and all forms of contact with the children and cease visiting the foster parent's property.

Also in October of 2020, the DHHR filed an amended petition in which it alleged that petitioner had criminal charges pending in Harrison and Barbour Counties, including multiple counts of possession of a controlled substance, two counts of possession with intent to deliver a controlled substance, and one count each of accessory after the commission of a felony and conspiracy to commit a felony.

In April of 2021, petitioner stipulated to abusing illegal substances, which rendered her unable to care for the children. Petitioner also admitted to subjecting the children to drug culture and its attendant dangers, including the fact that drugs were found in the home. Further, petitioner admitted that she used heroin a week prior to the hearing and had not been compliant with drug screens, and the court noted that the only drug test to which she did submit was at the preliminary hearing, which was positive for multiple drugs. According to the court, petitioner "denied she has been charged criminally recently for her actions." Based on petitioner's stipulation, the court adjudicated her as an abusing and neglectful parent. The court also directed petitioner to submit to a drug screen following the hearing, but the record shows that she refused to do so. Petitioner also filed a motion for a post-adjudicatory improvement period, but that motion was held in abeyance.

Ultimately, the matter came on for a dispositional hearing in October of 2021, during which both the DHHR and the guardian moved for termination of petitioner's parental rights. Her motion for a post-adjudicatory improvement period having been held in abeyance, petitioner asked the court to grant her a post-dispositional improvement period. The court found, however, that petitioner's noncompliance with drug screens, the fact that she was currently serving a sentence for driving under the influence, and her consistent positive drug screens from her criminal proceeding in Randolph County all established that she would not cooperate with any improvement period. Accordingly, the court denied her motion.

During the hearing, the DHHR presented testimony from petitioner's caseworker, who indicated that he spoke with petitioner only three times during the pendency of the proceedings because of her noncompliance and failure to stay in contact with the DHHR. In fact, petitioner could not be located from November of 2020 until April of 2021. According to this witness, petitioner informed him early in the proceedings that she would not submit to drug screens because

"she believed it was the intention of the Department to use her drug screens as 'ammunition.'" The caseworker also testified that petitioner was charged with additional crimes following the adjudicatory hearing. According to the caseworker, petitioner was required to submit to drug screens as a result of a criminal proceeding in Randolph County and almost all of those screens were positive. The worker explained that "these cases hinge on insight, and [petitioner] has none," as she did not appreciate the danger she placed the children in and could not articulate what she had done wrong.

Petitioner testified and indicated that she did not submit to drug screens in the case "because she believed it was a 'losing battle'" and that "she felt she had no reason to drug screen." She also referred to the DHHR caseworker as a liar and claimed to have called him many times, but that he would not return her calls. Petitioner also asserted that "she never put the children in harm's way."

Finally, the Director of the Randolph County Community Corrections Program where petitioner screened pursuant to her criminal proceedings testified. According to the witness, petitioner was compliant with her required screening until August 11, 2021, when the witness spoke with petitioner about a potential arrest. Petitioner should have reported again in two days, but the witness never saw petitioner again and later learned that a capias was issued for petitioner's arrest. The witness also explained that only one of petitioner's screens was negative, while the remainder were positive for suboxone, methamphetamine, opiates, and amphetamine. The witness also refuted petitioner's testimony that the witness informed her that her screens in Randolph County for her criminal proceedings could be sent to Barbour County to satisfy the testing requirements in the abuse and neglect proceeding. The witness also indicated that petitioner denied using drugs despite repeatedly testing positive.

Ultimately, the court terminated petitioner's parental rights. Before imposing this disposition, petitioner moved the court for a disposition other than termination of her parental rights, which the court denied. According to the court, petitioner previously relinquished her parental rights to older children because of her long-term substance addiction. Since that relinquishment, petitioner's addiction not only went unresolved, but petitioner "has moved on to selling drugs, with dangerous persons coming in and out of her house." The court found that an alternative disposition would not serve the children's welfare, as they required permanency. The court further found that petitioner refused to accept responsibility for her conduct, instead choosing to "blame[] everyone but herself." The court also found that petitioner failed to participate in the proceedings by refusing to submit to drug screens as ordered. Further, petitioner continued to engage in criminal conduct and absconded from her community corrections program for six weeks. Accordingly, the court found that petitioner had done nothing to address her substance abuse and that there was no reasonable likelihood that she could correct the conditions of abuse and neglect in the near future. As such, the court terminated petitioner's parental rights.[2] It is from the dispositional order that petitioner appeals.

---

[2]The father's parental rights were also terminated. The permanency plan for the children is adoption in the current foster home.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in denying her motion for an improvement period. According to petitioner, she moved for an improvement period because the DHHR never offered her services, and she sought an opportunity to demonstrate that she could correct the conditions of abuse and neglect. This argument, however, misstates the record, as the DHHR attempted to implement services first in the form of drug screens, yet petitioner explicitly informed the DHHR she would not comply with this requirement. According to the record, petitioner screened only one time as part of the underlying abuse and neglect proceedings, even going so far as to defy the circuit court's order that she submit to a screen following the adjudicatory hearing. In order to obtain an improvement period under West Virginia Code § 49-4-610, the parent must first demonstrate that she is likely to fully participate in the improvement period. Simply put, the record shows that petitioner willfully refused to comply with the basic service of drug screens, thereby establishing that she could not satisfy the burden for obtaining an improvement period.

Importantly, a circuit court has the discretion to deny a motion for an improvement period when no improvement is likely. *In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002). Not only was it clear that no improvement was likely because of petitioner's noncompliance, but she also refused to acknowledge that her conduct endangered the children. As we have explained,

[i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Given the overwhelming evidence of petitioner's failure to comply with the proceedings or acknowledge the full scope of her conduct, we find that the court did not err in denying her motion for an improvement period. *In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West

4

Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period.").

Finally, petitioner argues that it was error to terminate her parental rights because she moved for a less restrictive alternative and the children were placed with relatives. According to petitioner, this placement meant that the children's permanency would not be affected by leaving her parental rights intact. This argument, however, ignores the fact that the circuit court found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that the children's welfare required termination, the two findings upon which a court may base termination of parental rights under West Virginia Code § 49-4-604(c)(6). Petitioner does not challenge these findings on appeal and, therefore, cannot be entitled to relief.

We have also explained as follows:

> "Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As such, we find no error in the termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its October 14, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: May 12, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn